Grubb, Appellant, *v.* Rockey.

Argued January 3, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

reargument refused April 9, 1951.

*Edward L. Willard,* with him *Willard & Dunaway,* for appellants.

*William W. Litke,* with him *Fleming and Litke,* for appellees.

OPINION BY MR. JUSTICE BELL, March 19, 1951:

Plaintiffs filed a bill in equity for specific performance of a written contract to sell real estate. The contract provided that the purchase price for the real estate or farm was $10,000., which plaintiffs proved

they had paid on or before March 1st. Mr. Rockey alleged and testified over the vigorous objection of counsel for plaintiffs that an oral agreement was made for "the sale of said farm for $11,200. *and a reservation to the defendants of the wheat crop"* after March 1st; and that this oral agreement induced the written agreement. The chancellor found that the purchase price orally agreed upon was $11,200., and consequently refused specific performance. The narrow but very important question raised in this appeal is whether evidence of an oral, contemporaneous inducing agreement is admissible to vary and contradict (1) a comprehensive written agreement, and (2) the purportedly real consideration set forth therein.

The parties hereto entered into a complete, comprehensive and carefully prepared written agreement drawn by Mr. Taylor, *defendants' attorney,* which recited, inter alia, that defendants agreed to sell and the plaintiffs to buy the farm in question *"for the sum of Ten Thousand* ($10,000.00) *Dollars,** to be paid as follows: Three Thousand ($3,000.00) Dollars to be paid in cash . . . upon the signing of this Agreement the receipt whereof is hereby acknowledged; and the further payment of the balance of Seven Thousand ($7000.00) Dollars to be paid in cash to the parties of the first part *on or before March 1, 1949.* . . . possession of said premises shall be delivered to the party of the second part, . . . . *on or before the First day of March A. D. 1949; until which time the party of the first part shall be entitled to have and receive the rents, issues and profits thereof."* There then followed the usual provisions with respect to taxes and fire insurance, an acceleration clause upon default, and the usual waiver of exemption and inquisition and confession of judgment clauses.

---

* Italics throughout, ours.

Defendants attempted to both vary and contradict the written contract by the aforesaid oral agreement which they alleged induced the written contract. Defendant Rockey admitted that on Friday, *January 7,* he had offered to sell his farm to Grubb for $10,000. On Monday, *January 10,* plaintiff, Grubb, and defendant, Rockey, met, without their wives, to conclude the sale. Defendant took Grubb to the office of defendants' lawyer. Rockey testified that at that time he demanded $12,500. for the farm and after some haggling, agreed to accept $11,200. and the reservation to himself of the wheat crop which was to be harvested *after* March 1st; that Grubb agreed to this, but wanted to pay $1200. on the side so his family wouldn't know he was paying more than $10,000., which was the price everyone had agreed upon. *Grubb denied this.* Mr. Taylor testified that after some haggling Rockey and Grubb agreed that the purchase price for the farm was to be $11,200. There were thus three different versions of what occurred prior to the written agreement, which provided, as above noted, for a purchase price of $10,000. and the reservation of the wheat to Rockey *only until March* 1, 1949.

All parties agree (1) that on January 10, just before Mr. Taylor drew the written agreement, Grubb paid $3000. cash to Mr. Taylor for which he received a receipt "for down payment on C. S. Rockey farm", and also $1200. cash for which he received a receipt "cash payment on farm"; and (2) that Grubb paid Rockey $10,000. for the purchase of said farm on or before March 1, 1949. Defendants claim and the chancellor found that said payment of $1200. cash was a payment on account of the oral agreement and not as the receipt shows "cash payment on farm". If said $1200. cash payment for the farm was paid before the written agreement was dictated or signed, it was cer-

596

tainly advisable but not necessary to insert it in said written agreement, since *payments on account of the purchase price or consideration set forth in a written agreement may, ex necessitate, always be proved by parol.*

Mr. Taylor after consultation with Rockey, advised Grubb by letter dated March 4th, that Rockey would not go through with the sale of the farm until Grubb made some agreement with him concerning the wheat crop which was to be harvested after March 1st; and returned to Grubb four checks totaling $5800. If, on March 4th, plaintiffs still owed defendants $1200., as defendants *now* claim, is it not difficult to understand why Mr. Rockey and Mr. Taylor would have failed to mention that fact and would have demanded the wheat crop instead of the $1200.?*

It is unnecessary to decide ** which of the parties is mistaken about the alleged parol agreement—their contrariety of recollection merely serves to emphasize the wisdom of the modern Pennsylvania Parol Evidence Rule.

The chancellor relied on *Danish Pride Milk Products Co. v. Marcus,* 272 Pa. 340, 344, 116 A. 303; *Excelsior Sav. F. & L. Assn. v. Fox,* 253 Pa. 257, 98 A. 593; *Croyle v. Cambria L. & I. Co.,* 233 Pa. 310, 82 A. 360; *Gandy v. Weckerly,* 220 Pa. 285, 69 A. 858; and *Greenawalt v. Kohne,* 85 Pa. 369, which held or broadly asserted that "a contemporaneous oral agreement,

* Defendants' attempt to still retain (1) $4200. of the $10,000. which defendant Rockey admits plaintiffs paid him, and (2) the farm, and (3) the wheat crop, further discredits Rockey's good faith and credibility and his version of the alleged oral agreement.

** It is likewise unnecessary to decide whether an alleged oral agreement between Charles Rockey and Homer Grubb, which is *undisclosed* to the other parties to the written agreement, can bind Mrs. Grubb and Mrs. Rockey in a suit on the written agreement which all four of them signed.

on the faith of which a written contract was executed, may be shown although it varies the terms of the latter". While these and other earlier cases so holding were not specifically overruled, *a new or modern parol evidence rule was announced* in *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791; *and the old law was judicially buried* in *Speier v. Michelson,* 303 Pa. 66, 154 A. 127.

The modern Pennsylvania Parol Evidence Rule is well stated by Mr. Justice STEARNE in *Walker v. Saricks,* 360 Pa. 594, 598, 63 A. 2d 9: "This Court said in Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 323, 126 A. 791: 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, *the law declares the writing to be not only the best, but the only, evidence of their agreement*: Martin v. Berens, 67 Pa. 459, 463; Irvin v. Irvin, 142 Pa. 271, 287. *All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract* . . . and unless fraud, accident or mistake be averred, *the writing* constitutes the agreement between the parties, and *its terms cannot be added to nor subtracted from by parol evidence*: Union Storage Co. v. Speck, 194 Pa. 126, 133; Vito v. Birkel, 209 Pa. 206, 208.' "

In the leading case of *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791, we thus stated the test to be applied in cases of this character (p. 324): "In cases of this kind, where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject. 'In deciding upon this intent [as to whether a certain subject was intended to be embodied by the writing], the chief and most satisfactory index . . . is found in the

circumstances *whether or not the particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; . . .'." See to the same effect *Russell v. Sickles,* 306 Pa. 586, 591, 160 A. 610, and *O'Brien v. O'Brien,* 362 Pa. 66, 70, 71, 66 A. 2d 309. The wheat crop was clearly an issue or profit of the farm and both it and the purchase price of $10,000. were clearly and specifically mentioned and dealt with—adversely to the defendants—in the written agreement.

But the defendants further contend, and the chancellor found, that "parol evidence may always be introduced to prove the true consideration or purchase price . . . .".*

No logical or sound reason has been suggested why, in a case like this, the purchase price or consideration set forth in an executory written contract for sale of real estate should be treated differently from any other term or provision therein, or, more particularly, why it should be excluded from the Parol Evidence Rule. The old rule probably originated in connection with deeds which frequently recited a consideration of $1.00 or other nominal consideration, and which did not purport to show the true consideration or the real purchase price which the parties had actually agreed upon. The language so broadly asserted by the Court in such cases was loosely and perhaps unwittingly repeated in and applied to all cases in which the parties sought to prove by parol evidence the alleged actual or true consideration. *We are convinced that there exists no more reason for excepting in an agreement*

---

\* See, e.g., *Cridge's Estate,* 289 Pa. 331, 338, 137 A. 455; *Piper v. Queeney,* 282 Pa. 135, 127 A. 474; *Tasin v. Bastress,* 268 Pa. 85, 110 A. 744.

*of sale of real estate the purportedly real purchase price or consideration from the Parol Evidence Rule than there would be for excepting from said Rule any other term or provision of the written contract.*

We therefore hold that where the purchase price set forth in a written agreement purports to be not merely a nominal, but the real or actual amount agreed upon, then in the absence of fraud, accident or mistake, evidence of an alleged contemporaneous oral agreement (on the faith of which the written contract was allegedly executed), is inadmissible to add to or subtract from or contradict or vary the purchase price or consideration set forth in said written contract.

Decree reversed and record remanded to court below, with directions to enter a decree in accordance with this opinion. Costs to be paid by appellees.